Com. of Pa. *v.* Succop, Appellant.

Argued October 31, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Edward Lee Kearns,* and with him *Edward G. Coll* and *Charles B. Prichard,* for appellant.

*Earl F. Reed,* Special Assistant District Attorney, and with him *Andrew T. Park,* District Attorney, *George F. P. Langfitt,* First Assistant District Attorney, and *W. Denning Stewart,* for appellee.

Opinion by Parker, J., January 25, 1933:

The defendant, Bertram L. Succop, Director of Supplies of the City of Pittsburgh, and Charles H. Kline, Mayor of that city, were jointly indicted by a grand jury in Allegheny County in forty-five counts charging various misdemeanors in office. The gravamen of the various charges was the commission of the common law offense known as misdemeanor in office, but involving in some cases the doing of acts which were contrary to mandatory provisions of the statutory law of the state. A change of venue was granted to the defendants, and the case was tried in the County of Butler. A number of the counts were withdrawn, and of those that remained the defendant Succop was convicted on twenty-nine. Judgment was arrested as to the fifth count, and the court imposed sentence on each of the remaining twenty-eight counts, such sentences to run concurrently.

The misdemeanors charged had to do with the letting of contracts for supplies required by the city in its various activities, the methods used in the letting of such contracts, the violation of mandatory provisions of statutes relating thereto, in that illegal contracts of purchase were entered into and payments made from the funds of the city without competitive bidding, advertisement, and letting to the lowest responsible bidder, and in that some of the contracts were not in writing. In other counts it was charged that where there was bidding, methods were used which prevented actual competition and resulted in awarding contracts to those who were not the lowest responsible bidders and in favoring particular individuals to the prejudice of the city.

The assignments of error, almost without exception, violate the rules of this court and might be totally disregarded, but in view of the importance of the case, we have examined the record as presented to us with care and are all convinced that there was no substan-

tial error which prejudiced the defendant. The defendant complains of the charge of the court, the admission of certain exhibits and items of evidence, and that the verdict was against the law and the evidence.

The only exceptions taken to the charge of the court were to the refusal of certain of defendant's points and a general exception to the charge. At the conclusion, the court gave counsel for both parties opportunity to have any corrections made or ask for additional instructions. The question for us is, therefore, whether there was any fundamental error in the charge. The learned trial judge assigned to hear the case carefully and impartially reviewed the evidence and stated the law applicable. We are unable to discover any error that was unfavorable to the defendant, for he received the full benefit of all doubtful questions of law.

We have likewise examined the assignments of error as to the admission of exhibits and certain items of testimony as fully as it was possible to do from the printed record. Such inspection discloses that in a number of cases, no exceptions were taken to the rulings of the court at the time they were made, but yet such rulings are assigned as error. The assignments do not quote verbatim the question or offer, the objection thereto, the ruling of the court thereon, and the evidence admitted, rejected, or stricken out, and in some cases, it has been impossible from the printed record even to locate the rulings as to which complaint is made. Notwithstanding these breaches of our rules, we have read the printed record and are unable to discover any substantial error harmful to the defendant in any of these rulings.

A brief reference to the subject matter of counts seven to thirty, inclusive, and the testimony offered in support of the same, convinces us that the charges were properly laid and that there is ample evidence to support the conclusions of the jury. These counts

related to contracts for monthly supplies of meat to city hospitals and charged that the defendant prepared forms for the submitting of bids for the furnishing of meats to the city which were not in accordance with an ordinance relating thereto, that forms of proposal were prepared and submitted to bidders which tended to prevent competitive bidding, and used such a form and manner of tabulating bids submitted as resulted in the awarding of contracts to those who were not, in fact, low bidders, that the forms were deceptive and misleading and prepared with the intention of deceiving and misleading, and notwithstanding such action, the defendant did willfully let and enter into contracts on behalf of the city with one Brahm who was not the lowest responsible bidder, to the prejudice and damage of the city. We quote from the opinion of the lower court a summary of some of the evidence sustaining these counts: "The proofs showed that bids were received upon forms which set forth the names of various kinds and cuts of meats. A column was left blank in which the bidders entered the price they asked per pound for each kind and cut. In this column the successful bidder, Brahm, filled prices that were normal for many items, but as to many others he bid one cent a pound. No harm would have been done if the one-cent bid had been ignored in awarding the contract, as it was in actually buying the meat, but the contract was awarded on the average price of all items, reached by including the one-cent bids. It is obvious that Brahm would never have bid to supply, for one cent, meats worth thirty or forty, if he really anticipated that deliveries of those cuts and meats would be demanded at that price. But they never were. The bid on its face was absurd. The conclusion of fraudulent collusion was amply justified. The only purpose which the one-cent bids served was to reduce the average price and secure the award of the contract. After that they took no part in the

transactions, but as we have said normal prices were paid for these sorts of meats." This is but typical of the evidence offered in support of the other counts upon which verdicts of guilty were rendered.

The only matter left for our consideration is the complaint that, as to certain of the counts, the Commonwealth could not logically make out a case, because they alleged the willful making of contracts of purchase when, in fact, the contracts were invalid. The whole tenor of many of the charges was the making of illegal contracts and attempting to make contracts of purchase which were not valid or binding on the city. This, however, is the very matter that is prohibited by the law. The Commonwealth was not complaining that legal contracts were made, but that contracts were made, to the prejudice of the city, contrary to law and which were of no binding effect. We cannot discover any merit in this contention.

The judgment is affirmed, and the record remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.